**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARY MILLER, *et al.*,**<br>**Plaintiffs,**<br>**v.**<br>**CITY OF PHILADELPHIA, *et al.*,**<br>**Defendants.** | **CIVIL ACTION NO. 25-7146** |

**MEMORANDUM OPINION**

**Rufe, J.** **August 31, 2026**

Plaintiffs Mary Miller and Juliana Miller accuse Philadelphia Police Department officers of perpetrating an assault against them in the hours after the Philadelphia Eagles won Super Bowl 59. They bring suit under 42 U.S.C. § 1983 against the City of Philadelphia and the officers who were allegedly involved. After removing the case to federal court, the City and two of the three defendant-officers filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons given below, the Motion will be granted in part and denied in part.

## I. BACKGROUND[1]

Plaintiffs Mary Miller and Juliana Miller are Pennsylvania citizens.[2] The City of Philadelphia (the "City") is a municipal government organized under the laws of the Commonwealth of Pennsylvania.[3] Defendant-Officers Edward Berthcsi, Chanthorn Heng, and John Doe (the "Officer-Defendants" or "officers") are sued in their individual capacities.[4] The

[1] Unless noted otherwise, these facts are drawn from the Amended Complaint and are accepted as true for purposes of the City's Motion to Dismiss.

[2] Am. Compl. ¶ 1 [Doc. No. 1-3].

[3] *Id.* at ¶ 2.

[4] *Id.* at ¶ 3.

identity of Defendant Doe is unknown to Plaintiffs, and the Notice of Removal indicates that he has not been served.[5]

On or about February 9, 2025, after the Philadelphia Eagles won the Super Bowl, Plaintiffs were walking in downtown Philadelphia towards City Hall.[6] Mary's son was with them.[7] Plaintiffs eventually stopped at the Notary Hotel located at 21 North Juniper Street, Philadelphia, PA 19107 and went to the patio.[8] Plaintiff Juliana Miller later sat on a barricade.[9] Meanwhile, Defendants Berthcsi, Heng, and Doe were on duty in the same area.[10] Defendant Doe was dressed in plainclothes, and Defendants Berthcsi and Heng were dressed in uniform.[11]

The Officers ultimately came across Plaintiffs. Defendants Berthcsi and/or Heng communicated that Defendant Doe was also an officer, but they did not tell Plaintiffs his name.[12] Soon after, an altercation ensued—Defendant Doe punched Juliana in the face twice and used two hands to shove Mary to the ground.[13] When Mary tried to leave, her son was slammed to the

---

[5] *See* Notice of Removal ¶ 6 [Doc. No. 1]. To the extent that Defendant Doe has not been served within the period prescribed by Federal Rule of Civil Procedure 4(m), the Court will, as of this writing, order Plaintiffs to show cause why Defendant Doe should not be dismissed from the case without prejudice. Consistent with this Opinion, *see infra* pp. 11-12, Plaintiffs will have leave to file a second amended complaint adding Defendant Doe as a party to the extent his identity is revealed through discovery.

[6] Am. Compl. ¶ 5 [Doc. No. 1-3].

[7] *See id.* ¶ 12.

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 7.

[10] *Id.*

[11] *Id.* ¶ 8.

[12] *Id.* ¶ 9.

[13] *Id.* ¶¶ 10-11.

ground and punched.[14] Defendant Doe then slammed Mary into the ground, injuring her knee.[15] The Officer-Defendants did not take action to break up the incident.[16]

Plaintiffs suffered various injuries. Juliana sustained a sprained ankle, dealt with bruising and swelling on her head and cheek, and experienced dizziness.[17] She went to urgent care for treatment, where she was X-rayed and given a boot for her ankle.[18] Mary tore her ACL and meniscus and underwent reconstruction surgery on April 2, 2025.[19] After the surgery, Mary was unable to work for several months, and Juliana took absences from work to help her recover.[20] Mary's prescribed regimen involved using crutches and participating in six to nine months of physical therapy.[21] Her healthcare providers estimated a recovery period of one year.[22]

Plaintiffs also allege that the City "has a history of police misconduct and excessive force."[23] They claim that the Officer-Defendants had not received adequate training or supervision on how to manage interactions with civilians.[24]

On October 24, 2025, Plaintiffs filed a Complaint in the Court of Common Pleas of Philadelphia County against the City and the officers.[25] They initially alleged (1) assault and

---

[14] *Id.* ¶ 12.

[15] *Id.* ¶¶ 12-13.

[16] *Id.* ¶ 14.

[17] *Id.* ¶ 15.

[18] *Id.* ¶ 16.

[19] *Id.* ¶¶ 17-18.

[20] *Id.* ¶ 19.

[21] *Id.* ¶ 20.

[22] *Id.* ¶¶ 20-21.

[23] *Id.* ¶ 23 (citing nine cases that purportedly show that misconduct and misuse of force are prevalent in the Philadelphia Police Department).

[24] *Id.* ¶ 24.

[25] State Ct. Dkt. at 2 [Doc. No. 4]; Compl. [Doc. No. 1-2]. Plaintiffs had initiated the case earlier by filing a Praecipe to Issue Writ of Summons on July 26, 2025.

battery and (2) civil conspiracy.[26] However, Plaintiffs filed an Amended Complaint on December 3, 2025, pleading the following federal claims: Excessive Force under 42 U.S.C. § 1983 (Count 1),[27] Civil Conspiracy under 42 U.S.C. § 1983 (Count 2), Conspiracy to Deprive Plaintiffs of Their Due Process Right of Access to the Courts under 42 U.S.C. § 1983 (Count 3), and Municipal Liability pursuant to *Monell v. Department of Social Services of City of New York*,[28] also under 42 U.S.C. § 1983 (Count 4).[29] Counts 1 and 2 name the Officer-Defendants, Count 3 names all Defendants, and Count 4 names the City.[30] Upon learning of the federal claims, Officer Berthcsi, Officer Heng, and the City (the "Moving Defendants") timely removed the case to federal court[31] and filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).[32] The Motion is briefed and ripe for review.

## II. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), the pleading must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' "[33] In evaluating the sufficiency of a pleading, the Court accepts the well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party.[34] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

[26] Compl. ¶¶ 22-31 [Doc. No. 1-2].

[27] For Counts 1 and 2, that Title 18 is listed in the Amended Complaint instead of Title 42 appears to be a clerical issue.

[28] 436 U.S. 658 (1978).

[29] Am. Compl. ¶¶ 26-43 [Doc. No. 1-3].

[30] *Id.*

[31] Notice of Removal [Doc. No. 1]; *see* 28 U.S.C. § 1331.

[32] Mot. to Dismiss [Doc. No. 5].

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[34] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

inference that the defendant is liable for the misconduct alleged."[35] To be clear, the "plausibility" standard does not demand allegations demonstrating that the defendant's liability is "probable," but "it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[36] Finally, although a plaintiff need not plead "detailed factual allegations,"[37] Federal Rule of Civil Procedure 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[38]

## III. DISCUSSION

Section 1983 enables individuals to institute a civil action against any person who, under color of state law, causes them a deprivation of "rights, privileges, or immunities secured by the [federal] Constitution and laws."[39] To state a valid § 1983 claim, the plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[40] The plaintiff must also demonstrate that the defendant has "personal involvement in the alleged wrongs."[41]

### A. Count 1: Excessive Force – 42 U.S.C. § 1983

In their first § 1983 claim, Plaintiffs assert that the officers used excessive force in violation of the Fourth Amendment. Defendants Berthcsi and Heng argue that the claim should

---

[35] *Iqbal*, 556 U.S. at 678.

[36] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks omitted).

[37] *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

[38] *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[39] 42 U.S.C. § 1983.

[40] *West v. Atkins,* 487 U.S. 42, 48 (1988).

[41] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

be dismissed as to them because Plaintiffs did not accuse them of using force, let alone excessive force.[42] Plaintiffs contend that pleading use of force was unnecessary, as they could proceed on the theory that Defendants Berthcsi and Heng failed to intervene.[43]

An excessive force claim can be cognizable against an officer who did not join an attack based on a "failure to intervene."[44] That said, an officer's duty to protect against another officer's use of force applies only "if there is a realistic and reasonable opportunity to intervene."[45] When deciding if such opportunity arose, courts consider the "duration of the incident" and whether it "unfold[ed] in multiple stages."[46] For instance, there was a factual dispute regarding whether an officer could reasonably intervene in a case where the purportedly excessive force lasted fifteen minutes.[47] So too, a factual dispute existed where the attacking officer assaulted the plaintiff in multiple stages—kicking him, punching him, pulling him upright, and then pushing him, punching him again, and choking him.[48] But there is no such dispute if the incident lasts "five seconds."[49] And a failure-to-intervene claim will not lie if the incident ended before the plaintiff called the officers for help.[50]

As alleged, the assault in this case occurred in multiple stages: first, Defendant Doe punched Juliana in the face twice; second, he shoved Mary to the ground; third, Mary tried to walk away; fourth; Mary's son was slammed into the ground and punched; fifth, Mary attempted

---

[42] Mem. L. Supp. Defs.' Mot. to Dismiss ("Defs.' Mem. L.") at 3-5 [Doc. No. 5].

[43] Pls.' Resp. Opp'n Defs.' Mot. to Dismiss ("Pls.' Resp.") at 4-5 [Doc. No. 10].

[44] *See El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020).

[45] *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002).

[46] *El*, 875 F.3d at 335.

[47] *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995).

[48] *Smith*, 293 F.3d at 644, 650-52.

[49] *El*, 875 F.3d at 335-36.

[50] *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018).

to stop the altercation; and sixth, Defendant Doe slammed Mary into the ground.[51] Plaintiffs also allege that the three officers approached and interacted with them as a group. Taking the allegations as true and drawing reasonable inferences in Plaintiffs' favor, these facts tend to show that Defendants Berthcsi and Heng could have acted. Further factual development is needed to discern how much time elapsed, but that inquiry can be taken up in discovery. For now, the Court holds that the alleged multi-part assault was drawn-out enough to make it plausible that Defendants Berthcsi and Heng had an opportunity to intervene.[52]

Accordingly, the Motion to Dismiss will be denied as to Count 1.

**B. Count 2: Civil Conspiracy (Use of Excessive Force) – 42 U.S.C. § 1983**

Plaintiffs next claim that the officers conspired to use unlawful force against them. Defendants Berthcsi and Heng seek dismissal, arguing that Plaintiffs' allegations are conclusory and factually devoid.[53] Plaintiffs maintain that their allegations support the circumstantial inference that the officers had an agreement or understanding to use unlawful force.[54]

While "[c]ivil rights conspiracy claims normally survive a motion to dismiss where the constitutional claims do,"[55] Plaintiffs must still plead facts meeting the elements of a conspiracy

---

[51] Am. Compl. ¶¶ 10-13 [Doc. No. 1-3].

[52] The cases that Defendants cite do not disturb this reasoning. Defendants cite *Morgan v. Ortiz*, No. 24-cv-1190, 2024 WL 3824866, at *3 (E.D. Pa. Aug. 13, 2024), but the complaint in that case did not describe a drawn-out encounter. The "only assertion" there was the plaintiff's conclusory allegation that the officer "did absolutely nothing to protect [the plaintiff]." *Id. Griffin v. Petrucci*, No. 24-cv-112, 2024 WL 4594797 (E.D. Pa. Oct. 28, 2024)—another nonbinding decision—is inapplicable for the same reason: the claim was "stated in a cursory fashion" and seemingly said nothing of whether the incident occurred in multiple stages. The Court also disagrees with Defendants' argument that the failure-to-intervene claim was an "independent cause of action" that should have been pled as such. *El v. City of Pittsburgh* dealt with the same pleading structure and appreciated that an "excessive force claim" can be brought against attacking officers (i.e., Officers Warnock and Welling) and bystanders (i.e., Officer Kascuta) simultaneously. *See* 975 F.3d at 335. And though the summary judgment record in *El* ultimately showed that Officer Kascuta had no opportunity to intervene, an analogy to that evidence-based reasoning would be premature at the pleading stage.

[53] Defs.' Mem. L. at 5-8 [Doc. No. 5].

[54] Pls.' Resp. at 5-6 [Doc. No. 10].

[55] *Maldonado v. City of Phila.*, No. 22-cv-3474, 2023 WL 4685967, at *8 (E.D. Pa. July 21, 2023).

claim under § 1983. Namely, Plaintiffs must allege sufficient factual matter to show "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[56] More specifically, allegations going to conspiracy must support the existence of an agreement and concerted action.[57] To show agreement, a plaintiff must proffer facts indicating that "the state actors named as defendants in the complaint somehow reached an understanding to deny the plaintiff his rights."[58] "[I]n the absence of direct proof, . . . [an] understanding or agreement to conspire can be inferred from circumstantial evidence, . . . includ[ing] that the alleged conspirators did or said something to create an understanding, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy."[59]

Here, Plaintiffs' allegations that the officers "conspired to deprive Plaintiffs of their constitutional rights"[60] and "took overt acts in furtherance of the conspiracy"[61] merely recite elements of a conspiracy claim without alleging sufficient facts for the Court to infer that the Officer-Defendants were liable for the alleged conspiracy. Thus, the Court need not consider those statements in determining whether Plaintiffs sufficiently pled conspiracy.

Furthermore, the allegations that Berthcsi and Heng were on duty at the time, did not intervene, and did not provide Defendant Doe's name to Plaintiffs support, at most, a claim of

---

[56] *Rosembert v. Borough of E. Lansdown*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 137-41 (3d Cir. 2017).

[57] *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018).

[58] *Id.* (internal quotation marks and alterations omitted).

[59] *Id.* (cleaned up).

[60] Am. Compl. ¶ 31 [Doc. No. 1-3].

[61] *Id.* ¶ 32.

parallel conduct.[62] "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism."[63] It cannot be reasonably inferred from the minimal circumstantial evidence provided that the Officer-Defendants' acts went beyond parallel conduct or that they reached an agreement or understanding to deprive Plaintiffs of their constitutional right to be free from excessive force.

Thus, the Motion to Dismiss will be granted as to Count 2.

**C. Count 3: Civil Conspiracy To Deprive Plaintiffs of Their Due Process Right of Access to the Courts – 42 U.S.C. § 1983**

In Count 3, Plaintiffs accuse the Moving Defendants of depriving them of their due process right of access to the courts. The right of access to the courts derives from the First and Fourteenth Amendments.[64] "Although deprivations of the right of access to the courts arise most often in the prison context, this right is also denied when law enforcement officers conspire to cover up constitutional violations."[65] However, "only prefiling conduct that either prevents a plaintiff from filing suit or renders the plaintiff's access to the court ineffective or meaningless constitutes a constitutional violation."[66] Put another way, plaintiffs bringing access-to-courts claims must "show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[67]

---

[62] In their brief, Plaintiffs argue that Defendants Berthcsi and Heng refused to give Defendant Doe's name "after[]" the alleged assault. Pls.' Resp. at 6 [Doc. No. 10]. But the facts in the Amended Complaint indicate that they failed to give his name beforehand. *See* Am. Compl. ¶¶ 9-10 [Doc. No. 1-3] ("9. Defendant Berthcsi and/or Defendant Heng . . . would not tell Plaintiffs what Defendant Doe's name was. 10. Defendant Doe *proceeded* to punch Juliana in the face twice." (emphasis added)).

[63] *Rosembert*, 14 F. Supp. at 648.

[64] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

[65] *Jutrowski*, 904 F.3d at 295 (footnote and citation omitted).

[66] *Est. of Smith v. Marasco*, 318 F.3d 497, 511 (3d Cir. 2003).

[67] *Monroe*, 536 F.3d at 205.

Applying these principles, courts hold that access-to-courts claims are not cognizable when predicated solely on the nondisclosure of officer names.[68] In *Carter v. City of Philadelphia*, a civilian claimed that the City deprived him of access to court proceedings due to internal police procedures that inhibited him from identifying all of the officers involved in an alleged beating that happened during a traffic stop.[69] The district court dismissed the claim, and the Third Circuit affirmed, reasoning that the plaintiff's access to the courts was not "ineffective or meaningless" because he "successfully filed the instant lawsuit" and "could have dealt with uncertainty about which officers were present" in discovery and then joined the unidentified officers to the action.[70] Likewise, in *Lee v. Clark*, the court dismissed the access-to-courts claim of a prisoner who was refused the names of certain Doe defendants.[71] The court noted that, despite the non-identification, the plaintiff did "not allege actual injury to his ability to litigate a claim," and, indeed, was able to "actively litigat[e] his claims" before the court.[72]

Here, similar logic compels the Court to dismiss Plaintiffs' claim of a conspiracy to deprive them of access to the courts. Even if Plaintiffs' allegations were enough to sustain a claim of conspiracy, the Amended Complaint lacks factual material explaining how the officers' refusal to identify Defendant Doe impaired their opportunity to pursue nonfrivolous claims. Plaintiffs are adequately litigating this lawsuit against multiple defendants, including Defendant Doe, whose allegedly unlawful assault is described in detail within the Amended Complaint.

---

[68] *Carter v. City of Phila.*, 719 F. App'x 134, 137 (3d Cir. 2017); *Lee v. Clark*, No. 1:19-cv-353, 2020 WL 8768344, at *6 (W.D. Pa. Dec. 14, 2020) (collecting cases).

[69] *Carter*, 719 F. App'x at 136.

[70] *Id.* at 137.

[71] *Lee*, 2020 WL 8768344, at *5-6; *see also McCain v. Wetzel,* No. 11-cv-7241, 2012 WL 2820475, at *2-4, 3 n.5 (E.D. Pa. July 10, 2012).

[72] *Id.* (internal quotation marks omitted).

Further, the Amended Complaint is not rendered "ineffective" or "meaningless" on account of Defendant Doe's concealed identity since Plaintiffs can, as in *Carter*, "attempt[] to identify [Defendant Doe] through discovery and then [seek] to join [him] in the present action."[73]

Plaintiffs' reliance on the Third Circuit's decision in *Jutrowski* is unavailing. In *Jutrowski*, the court expressed concern about the scenario in which officers evade liability by concealing factual details to a would-be plaintiff in a so-called "conspiracy of silence."[74] The court drew attention, as do Plaintiffs here, to the fact that the concealment of information can prevent the Plaintiff from establishing the "personal involvement" prong of a § 1983 claim.[75] But the facts of *Jutrowski* make it distinguishable. There, the plaintiff pled that officers covered up an assault by filing false and misleading police reports and giving misleading grand jury testimony.[76] It was apparent at the outset that this alleged cover-up purported to prejudice the plaintiff's case, as "he was unable to identify which of the officers in his immediate vicinity was the one that kicked him"—a flaw that doomed his excessive force claim.[77] Here, however, the Amended Complaint unmistakably identifies Defendant Doe as the instigator of the attack, and Plaintiffs will have adequate opportunity to join him to the suit as the case proceeds to discovery.

In conclusion, the Court will grant the Motion to Dismiss as to Count 3. Should the City or Defendants Berthcsi or Heng purport to obscure discovery of Officer Doe's identity as the case progresses, Plaintiffs can seek leave to amend to re-plead Count 3.

---

[73] *Carter*, 719 F. App'x at 137. Count 3 fails with respect to the City for the additional reason that Plaintiffs did not plead factual content to support that the City "has a policy or custom" of withholding officer identities or "obstructing individuals from bringing suit." *See Hernandez v. City of Phila.*, No. 22-cv-0027, 2022 WL 2290849, at *6 (E.D. Pa. June 23, 2022); Am. Compl. ¶ 40 [Doc. No. 1-3].

[74] *See Jutrowski*, 904 F.3d at 285, 291, 294.

[75] *Id.* at 285, 291.

[76] *Id.* at 287.

[77] *Id.* at 287, 292-93.

**D. Count 4: *Monell* Claim – 42 U.S.C. § 1983**

In their final claim, Plaintiffs seek to hold the City liable based on its putative history of police misconduct and inadequate police management. Municipality liability under § 1983 cannot exist based on a theory of respondeat superior or vicarious liability.[78] Rather, "[a] local government may be sued under § 1983 only for acts implementing an official policy, practice or custom."[79] When alleging a *Monell* claim under § 1983, a plaintiff can demonstrate that the municipality sanctioned the constitutional transgression in two ways: "A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."[80] A failure to adequately train or supervise police officers falls into the second category of *Monell* claims.[81] Here, Plaintiffs develop their municipal liability claim by reference to both theories. The Court addresses each theory separately and finds that the Amended Complaint lacks factual rigor on both fronts.

First, under the "policy and custom" track of *Monell* liability, a "policy" results when a "decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."[82] A policy may take the form of "a statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal government's] officers."[83] Custom, by contrast, exists when "practices of state officials are so

[78] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978).

[79] *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984) (citing *Monell*, 436 U.S. at 690-91).

[80] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citation omitted).

[81] *See id.*

[82] *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (internal quotation marks omitted).

[83] *Monell*, 436 U.S. at 690.

permanent and well settled as to virtually constitute law."[84] A custom can underlie § 1983 liability "even though [it] has not received formal approval through the body's official decisionmaking channels,"[85] but it "must have the force of law by virtue of the persistent practices of [municipal] officials."[86] Whether asserting a policy or custom, "the plaintiff must show that the municipal action was the 'moving force' behind the constitutional violation."[87]

Plaintiffs' "policy and custom" allegations fail to state a claim. Rather than citing a policy proclamation or edict, Plaintiffs argue that a history of nine cases in which Philadelphia police officers used excessive force satisfies the "custom" element of a *Monell* claim. However, "[i]solated events will not establish a pattern of abusive behavior. Neither will mere recitation of the number of complaints filed suffice to prove a policy or custom. A plaintiff must show why those prior incidents deserved discipline and how the misconduct in those cases is similar to that involved in the present action."[88] Thus, Plaintiffs' list of nine cases, which lacks accompanying information as to the similarities between those incidents and the present matter, as to how the cases were resolved, and whether the defendant officers were involved in any prior incidents, do not establish a custom "so persistent and widespread as to practically have the force of law."[89]

Plaintiffs' analogy to *Wright v. City of Philadelphia* is inapt. In *Wright*, the plaintiff alleged "eight specific customs" and "eight [prior] instances" in which "the Philadelphia Police

---

[84] *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (internal quotation marks omitted).

[85] *Monell*, 436 U.S. at 690-91.

[86] *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) (internal quotation marks omitted).

[87] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010) (quoting *Berg*, 219 F.3d at 275)).

[88] *Mariani v. City of Pittsburgh*, 624 F. Supp. 506, 511 (W.D. Pa. 1986). Although *Mariani* does not carry the weight of binding precedent, numerous courts in the Third Circuit have adopted its reasoning. *See, e.g.*, *Izzard v. Cnty. of Montgomery, Pa.*, No. 21-cv-418, 2021 WL 5639817, at *8 (E.D. Pa. Nov. 29, 2021) ("custom" theory of municipal liability failed at the pleading stage when the plaintiff merely recited prior complaints); *see also Burns v. Borough of Doylestown*, No. 24-cv-2690, 2025 WL 2845362, at *6 (E.D. Pa. Oct. 7, 2025); *Thompson v. Se. Pa. Transp. Auth.*, 21-cv-2286, 2022 WL 17958629, at *4 (3d Cir. Dec. 27, 2022).

[89] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Department, *including some of the same officers named in [the] case*, engaged in the type of misconduct" that was at issue.[90] Here, not only did the nine cases identified not involve the Officer-Defendants, but those cases feature mere "rudimentary summaries,"[91] omit mention of final dispositions,[92] and reflect an overly broad "custom."[93] As presently pled, the Amended Complaint does not assert a valid municipal liability claim on a "policy or custom" theory.

Second, under the "failure-to-train" track of *Monell* liability, "a plaintiff need not allege an unconstitutional policy."[94] "For claims involving police officers, the Supreme Court has held that the failure to train serves as a basis for § 1983 liability only where it . . . amounts to deliberate indifference to the rights of persons with whom the police come into contact."[95] "Deliberate indifference" requires showing that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[96] To establish deliberate indifference in connection with a failure-to-train claim, plaintiffs must usually show "[a] pattern of similar constitutional

---

[90] *Wright v. City of Phila.*, 229 F. Supp. 3d 322, 336-37 (E.D. Pa. 2017) (emphasis added).

[91] *See Burns*, 2025 WL 2845362, at *6 (dismissing *Monell* claim where "rudimentary summaries" of other lawsuits against the municipality could not establish a pattern that "essentially had the force of law" (internal quotation marks omitted)).

[92] *Cf. Thompson*, 2022 WL 17958629, at *4 ("Prior lawsuits alleging [a policy or custom] . . . alone are not enough to state a claim of unlawful custom.").

[93] *See Booth v. City of Phila.*, No. 25-429, 2026 WL 838308, at *4 (E.D. Pa. Mar. 26, 2026) ("This portion of the *Monell* claim cannot advance past the pleading phase because the law requires a specific policy or custom, rather than broad examples of excessive force interspersed with "threadbare recitals" of the cause of action.").

[94] *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

[95] *Id.* (internal quotation marks omitted) (cleaned up).

[96] *Doe v. Luzerne Cnty.*, 660 F.3d 169, 179-80 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

violations by untrained employees."[97] Absent that pattern, though, a plaintiff may establish liability if "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[98] Finally, when asserting "deliberate indifference" in connection with a municipality's failure to ensure proper supervision, "a plaintiff must allege that the municipality 'has contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents.' "[99]

Although Plaintiffs claim deliberate indifference, their allegations are conclusory. Their assertions that the City failed to "adequately train and/or supervise [officers] on how to handle interactions with the public,"[100] "remain[ed] deliberately indifferent,"[101] and "failed to take action"[102] regarding prior instances of abuse merely restate the elements of a *Monell* claim. Plaintiffs do not describe that the municipality had contemporaneous knowledge of the alleged assault or that a supervisor acquiesced to it. They do not state a pattern of instances where officers were similarly untrained. And they do not develop facts showing how the officers confronted a "difficult choice," that would have been within the purview of a reasonable training program. Nor have Plaintiffs offered facts explaining why the "duties assigned to specific officers or employees" made it "so obvious" that inadequate training caused Plaintiffs'

---

[97] *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Connick*, 563 U.S. at 62) (alteration in original).

[98] *Brown*, 269 F.3d at 215 (quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989)).

[99] *Hernandez*, 2022 WL 2290849, at *4 (quoting *Simpson v. Ferry*, 202 F. Supp. 3d 444, 455 (E.D. Pa. 2016)).

[100] Am. Compl. ¶ 24 [Doc. No. 1-3].

[101] *Id.* ¶ 42.

[102] *Id.* ¶ 41.

injuries.[103] In sum, the dearth of factual allegations prevents the Court from inferring deliberate indifference.[104]

Thus, the Court will grant the Motion to Dismiss as to Count 4.

## IV. LEAVE TO AMEND

In the civil rights context, the Third Circuit instructs courts to grant an opportunity to cure an otherwise deficient cause of action, unless doing so would be inequitable or futile.[105] Finding neither of those exceptions applicable, the Court will permit Plaintiffs to file an amendment with respect to Counts 2, 3, and 4. Those claims will be dismissed without prejudice.

## V. CONCLUSION

For the foregoing reasons, the Moving Defendants' Motion to Dismiss will be granted as to Counts 2, 3, and 4, which will be dismissed without prejudice and with leave to amend. The Motion will otherwise be denied. An order follows.

---

[103] *See Brown*, 269 F.3d at 215 (quoting *City of Canton*, 489 U.S. at 390).

[104] *See Miller v. City of Phila.*, 162 F.4th 88, 94 (3d Cir. 2025) (affirming the district court's dismissal of a municipal liability claim that lacked factual development).

[105] *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).